IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Robert J. Cherepinsky, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No.: 2:06-1269-PMD |
| v. ) | |
| ) | **ORDER** |
| Sears Roebuck and Co. and Sears ) | |
| Transition Pay Plan, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court upon Defendants' motion to strike and motion to dismiss certain specified causes of action. For the reasons set forth herein, the court grants Defendants' motion to strike and grants in part and denies in part Defendants' motion to dismiss.

## BACKGROUND

On April 27, 2006, Plaintiff Robert J. Cherepinksy ("Cherepinsky" or "Plaintiff") filed a complaint against Defendants Sears Roebuck and Co. ("Sears") and Sears Transition Pay Plan ("Plan"). In his complaint, Plaintiff asserts the following facts.

First, Plaintiff states that he was employed by Defendant Sears from 1969 to 1984, and then again in 1999, as a salesperson in the HVAC Sales Department in the Charleston, South Carolina area. Plaintiff asserts that as an employee of Sears, he was a participant in the Sears Transition Pay Plan. According to Plaintiff, his job required him to travel between cities in the State of South Carolina. However, Plaintiff asserts that at some point during 2004, Sears announced that it would begin "transitioning" the HVAC sales associates to a wholly owned subsidiary known as "SHIP." Plaintiff claims that "[t]he terms of the transition are designed to force a large group of employees over the age of forty to retire by significantly reducing compensation." (Pl.'s Compl. ¶ 8.)

According to Plaintiff, he was forced to take early retirement on January 28, 2005, "[d]ue to the non-comparable work offered to Plaintiff and his reduction in overall earnings and benefits of over 10%." (Pl.'s Compl. ¶ 9.)  Thereafter, Plaintiff filed a claim for benefits, which Defendants denied.

After fully exhausting his administrative remedies, Plaintiff filed the present complaint against Defendants, wherein he alleges the following six causes of action: (1) violation of 29 U.S.C. § 1132; (2) violation of the Fair Labor Standards Act of 1938; (3) violation of the South Carolina Payment of Wages Act; (4) breach of fiduciary duty under 29 U.S.C. §§ 1104 and 1109; (5) a claim to enjoin action under 29 U.S.C. § 1132(a)(3); and (6) violation of the Payment of Post-Termination Claims to Sales Representatives Act.  On June 26, 2006, Defendants filed a motion to strike and a motion to dismiss certain specified causes of action.  Plaintiff filed a response in opposition to Defendants' motions, and Defendants filed a reply.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that Plaintiff cannot prove any set of facts in support of its claims that entitles it to relief.  *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged.  *Mylan Labs. Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present."  *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir. 1972).

**DISCUSSION**

The court first addresses Defendants' motion to strike and then addresses Defendants' motion to dismiss certain specified causes of action.

**I.    Defendants' Motion to Strike**

In their motion to strike, Defendants first ask the court to strike Plaintiff's demand for a jury trial as to the first, fourth, and fifth causes of action (the ERISA causes of action). Plaintiff agrees with Defendants that his ERISA claims against Defendant Plan are not triable to a jury. However, with no further explanation, Plaintiff does not agree that his ERISA claims against Defendant Sears are not triable to a jury.

**A.    Plaintiff's Demand for a Jury Trial as to his ERISA Claims Against Sears**

As Defendants point out, Plaintiff's first cause of action seeks nothing more than Plan benefits, which Plaintiff alleges to have been improperly denied in violation of 29 U.S.C. § 1132. Plaintiff's fourth cause of action alleges that Defendants breached their fiduciary duties by failing to administer the Plan in accordance with the Plan documents. And Plaintiff's fifth cause of action, titled "claim to enjoin action under 29 U.S.C. § 1132(a)(3),"also alleges that Defendants failed to pay benefits or comply with federal law and the Plan documents.[1]

In Defendants' motion to strike, Defendants assert that "because Plaintiff's claims are nothing more than a claim for Plan benefits (and should the Court allow the Fourth and Fifth Causes of Action to stand, claims for breach of fiduciary duty under ERISA), it is well-settled in this Circuit

---

[1] In their motion to dismiss, Defendants seek dismissal of Plaintiff's fourth and fifth causes of action for failure to state a claim upon which relief can be granted. The court does not address this request in this section of the Order, but rather, the court addresses this request when it addresses Defendants' motion to dismiss.

that such actions are equitable in nature and are not triable to a jury." (Defs.' Mot. at 3.) In support of this assertion, Defendants cite *Berry v. Ciba-Giegy Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985), and *Biggers v. Wittek Indus., Inc.*, 4 F.3d 291, 298 (4th Cir. 1993). Contrary to Defendants' assertion that it is well-settled that Plaintiffs' claims are not triable to a jury, however, the court finds the issue to be a bit more complicated, as a review of Fourth Circuit case law reveals a theoretical maze of interpretations wherein courts have taken many different approaches.

In *Berry*, the Fourth Circuit Court of Appeals considered whether an ERISA claimant seeking benefits under § 1132(a)(1)(B) could insist upon a jury trial. 761 F.2d 1003. The court determined that there is no implied right to a jury trial and offered three reasons in support of this result. *Id*. at 1006. First, the court considered that it may be inappropriate for a jury to review the actions of a plan administrator under the arbitrary and capricious standard because the jury may not understand the presumption of correctness that attaches to that standard. Next, the court found that congressional silence on the issue in the text of the statute "returned [the question] to the common law of trusts . . . where, as noted, no jury trial obtains." *Id*. at 1007 (internal citations omitted). Finally, the court held that "proceedings to determine rights under employee benefit plans are equitable in character and thus a matter for a judge, not a jury." *Id*.; *see also Colonial Williamsburg Found. v. Blue Cross & Blue Shield of Virginia*, 909 F.Supp. 386, 388 (E.D. Va. 1995) (listing these three reasons).

In *Firestone Tire & Rubber Co. v. Bruch*, the United States Supreme Court eliminated the Fourth Circuit's first reason – the need to review the actions of a plan administrator under an arbitrary and capricious standard. 489 U.S. 101, 109 (1989). In *Firestone*, which did not involve entitlement to a jury trial, the Court held that decisions of plan administrators were to be reviewed

4

under the *de novo* standard of review supplied by trust law and not the arbitrary and capricious standard. *Id*. at 115. Some courts have used the *Firestone* ruling to find an implied right to a jury trial in certain ERISA cases. *See*, *e.g.*, *McDonald v. Artcraft Elec. Supply Co.*, 774 F.Supp. 29 (D.D.C. 1991) ("If a right to a jury existed prior to the passage of ERISA, then to hold that no such right exists under ERISA would 'afford less protection' to employee rights than they had before the Act was passed - a result the Supreme Court squarely rejected in *Firestone*."); *Vaughn v. Owen Steel Co., Inc.*, 871 F.Supp. 247 (D.S.C. 1994) (considering the availability of jury trials under certain ERISA claims to be open in this Circuit)[2]; *but see Colonial*, 909 F.Supp. at 387 ("Notwithstanding that the principles enunciated in *Firestone* have provided new fuel for the argument that ERISA impliedly authorizes trial by jury, this court is bound to follow the unaltered line of Fourth Circuit precedent holding that there is no implied right to a jury trial under ERISA.").

As the court pointed out in *Colonial*, in the years since *Firestone*, the Fourth Circuit decided *Biggers v. Wittek Indus., Inc.*, 4 F.3d 291, wherein the court, citing *Berry* and *Firestone*, held that the district court had erred in submitting a claim made under an ERISA benefit plan to a jury for resolution. 909 F.Supp. at 387. "Because the decisions in *Berry* and *Firestone* can be read consistently and because the Fourth Circuit implicitly affirmed the holding of *Berry* in [*Biggers*], wherein the Fourth Circuit concluded that ERISA claims are generally not triable to a jury, *Berry* remains the controlling law on that subject in this circuit." *Id*.; *see also Allison*, 953 F.Supp. at 128

---

[2] The District Court for the Eastern District of Virginia declined to follow the lead of *Vaughn* in *Colonial*, 909 F.Supp. at 389 n.1. Likewise, this court declines to follow *Vaughn*, finding instead the reasoning behind *Colonial* and *Allison v. Cont'l Cas. Ins. Co.*, 953 F.Supp. 127, 128 (E.D. Va. 1996), to reflect more accurately the state of the law in the Fourth Circuit. Accordingly, the court agrees that *Firestone* did not vitiate *Berry* completely, and this court "follow[s] the unaltered line of Fourth Circuit precedent holding that there is no implied right to a jury trial under ERISA." *Colonial*, 909 F.Supp. at 387.

5

(striking plaintiff's request for a jury trial in his claim for benefits under a long-term disability benefits policy pursuant to *Berry* and *Biggers*).

Additionally, with respect to the Seventh Amendment, district courts in the Fourth Circuit have concluded both that it is necessary for a court to conduct a Seventh Amendment analysis, and that it is not. *See Colonial*, 909 F.Supp. at 389 ("[B]ecause neither *Berry* nor *Biggers* explicitly conducted a Seventh Amendment analysis and because of the Supreme Court's recent emphasis on that issue, *see Chauffers , Teamsters, & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990), the court will now turn to CFW's argument that it is entitled to a trial by jury under the Seventh Amendment."); *Hulcher v. United Behavioral Sys., Inc.*, 919 F.Supp. 879, 883 (E.D.Va. 1995) ("[T]he Court notes that *Berry* is also limited because the court, for whatever reason, did not conduct a Seventh Amendment analysis to determine whether or not there is a constitutional right to a jury trial in § 1132(a)(1)(B) actions."); *cf. Allison*, 953 F.Supp. at 129 ("[T]here is some issue as to whether a court must even conduct a Seventh Amendment analysis to determine whether a jury trial is warranted in ERISA cases. . . . [I]f a Seventh Amendment analysis was necessary, the Fourth Circuit would have performed one in *Biggers*, which came after *Firestone*. As such, by implication, the Fourth Circuit has reaffirmed the notion that jury trials are not permitted in ERISA cases."); *Ellis v. Metro. Life Ins. Co.*, 919 F.Supp. 936, 938 (E.D. Va. 1996) ("[*Biggers'*] silence would indicate that courts need not [undertake a Seventh Amendment analysis] in the ERISA cases, and suggests that the *Berry* holding that ERISA cases are a matter for judges (not juries) remains good law.").

Here, Plaintiff seeks benefits allegedly due to him; Plaintiff also asserts causes of action for breach of fiduciary duty and to enjoin action under 29 U.S.C. § 1132(a)(3). First, with respect to Plaintiff's latter claims – namely, his fourth and fifth causes of action for breach of fiduciary duty

6

and to enjoin action under section 502(a)(3) – it is clear that even when the court undertakes a Seventh Amendment analysis,[3] these claims implicate fiduciary duties and trust principles and are most analogous to a suit in equity under the common law.  *See Colonial*, 909 F.Supp. at 390.  Thus, the court concludes that Plaintiff is not entitled to a jury trial with respect to these claims.  *See also Phelps v. C.T. Enters., Inc.*, 394 F.3d 213, 222 (D.S.C. 2005) ("Providing, as it does, for only equitable remedies, this section of ERISA likewise entails no right to jury trial."); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 883 (6th Cir. 1997).

Likewise, with respect to Plaintiff's claim for benefits allegedly due, the court concludes that Plaintiff is not entitled to a jury trial.  *See Ellis*, 919 F.Supp. at 938 ("*Biggers* involved essentially the same issue presented here: a denial of benefits to an individual employee under the employee benefit plan.  The district court in *Biggers* had examined the question under state law contract principles, without considering that trusts were traditionally a matter for the chancery, not the law courts.  But because the action itself stated a claim under ERISA, the Fourth Circuit states, in no uncertain terms, that it required a bench trial.").  The court recognizes, however, that other courts have taken the position that a claim for a denial of benefits is more similar to a legal contract question.  *See Hulcher*, 919 F.Supp. at 884 ("Unlike actions for breach of fiduciary duty, a suit to recover what is due and owing under a benefits plan is, in reality, an action at law to recover a purported legal entitlement.").  However, because this latter position ignores the traditional role of chancery courts, this court finds more persuasive the position taken in *Ellis*.  919 F.Supp. at 938.  Ultimately, without further guidance from the Fourth Circuit on this point, "[i]n view of the well-

---

[3] As previously mentioned, there is some issue as to whether a Seventh Amendment analysis is even required in the Fourth Circuit.  Moreover, nowhere does Plaintiff actually assert that he is entitled to a jury trial pursuant to the Seventh Amendment.

7

reasoned opinions within the district courts of the Fourth Circuit that have followed after *Hulcher*, this court is of the opinion that it is still good law in the Fourth Circuit that ERISA actions are equitable in nature and are for the Court to decide rather than the jury.  Therefore, the Court will allow Defendant[]s['] Motion to Strike Plaintiff's demand for a jury trial of his ERISA claim[s]." *Lawrence v. Cont'l Cas. Co.*, 1998 WL 34312660, *3 (M.D.N.C. 1998) (unpublished).

In their motion to strike, Defendants next ask the court to strike Plaintiff's claim for liquidated damages as to his fourth and fifth causes of action – namely, his claim for breach of fiduciary duty under ERISA section 409, 29 U.S.C. § 1109, and his claim for relief under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).  Additionally, Defendants ask the court to strike Plaintiff's claims for any extra-contractual damages and/or punitive damages (to the extent Plaintiff seeks these damages) with respect to his fourth and fifth causes of action.  Plaintiff does not consent to Defendants' request to strike his claim for liquidated damages, extra-contractual damages, or punitive damages.  However, Plaintiff makes no argument as to why this court should not grant Defendants' request.

**B.     Plaintiff's Request for Liquidated, Extra-Contractual, and Punitive Damages**

First, in Plaintiff's fourth and fifth causes of action, he seeks "an award of damages, liquidated damages, prejudgment interest, costs, and legal fees."  (Pl.'s Compl. ¶¶ 30, 38.)  In their motion to strike, Defendants assert that neither ERISA section 409, 29 U.S.C. § 1109, nor ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), provides for an award of liquidated damages. Additionally, Defendants assert that to the extent that Plaintiff seeks punitive or extra-contractual damages by asserting that he is entitled to "an award of damages," such damages also are not available under either section 409, 29 U.S.C. § 1109, or ERISA section 502(a)(3), 29 U.S.C. §

1132(a)(3).

Pursuant to ERISA section 502(a)(2), a civil action may be brought "by the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief" under section 409. 29 U.S.C. § 1132(a)(2). Section 409 provides in pertinent part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

29 U.S.C. § 1109. Section 502(a)(3) permits a participant, beneficiary, or fiduciary to bring a civil action "(a) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. 1132(a)(3). As Defendants point out, missing from these sections is any reference to liquidated damages, extra-contractual damages, or punitive damages. As the Supreme Court stated in *Mass. Mutual Life Ins. Co. v. Russell*:

> The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted, however, provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a comprehensive and reticulated statute.

473 U.S. 134, 146 (1985) (citation omitted). Ultimately, the court agrees with Defendants that the omission of any reference to an award of liquidated damages in either section 409(a) or section 502(a)(3) provides strong evidence that Congress did not intend to authorize such an award under

9

those statutory sections.[4]  Accordingly, the court grants Defendants' request to strike Plaintiff's request for liquidated damages in his fourth and fifth cause of action.

Furthermore, the court grants Defendants' request to strike Plaintiff's request for extra-contractual and/or punitive damages (to the extent Plaintiff seeks to recover such damages in his request for "an award of damages").  As Defendants properly point out, extra-contractual and/or punitive damages are not available under ERISA sections 409 or 502(a)(3).  *See Mass. Mut.*, 473 U.S. at 144 ("[T]here really is nothing at all in the statutory text to support the conclusion that such a delay gives rise to a private right of action for compensatory or punitive relief.  And the entire text of § 409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself. . . . [W]e do not find in § 409 any express authority for an award of extracontractual damages to a beneficiary."); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 355-59 (1993) (holding that equitable relief under 502(a)(3) does not include compensatory and punitive damages). Accordingly, pursuant to the foregoing analysis, the court grants Defendants' motion to strike in whole.

## II.    Defendants' Motion to Dismiss

In Defendants' motion to dismiss, Defendant Plan first seeks dismissal of Plaintiff's second, third, and sixth causes of action as to it, asserting that the Plan is not a proper party defendant to these claims.  In his response, Plaintiff consents to dismissal of Defendant Plan as to the second, third, and sixth causes of action.  (Pl.'s Response at 3.)  Therefore, the court grants Defendants'

---

[4] Moreover, as Defendants point out, the explicit reference to liquidated damages in ERISA section 502(g)(2), further supports the conclusion that Congress did not intend to authorize by silence such damages in sections 409(a) or 502(a)(3). Section 502(g)(2) permits liquidated damages in the context of an action for delinquent contributions to a multi-employer pension plan when the plan provides for such damages; section 502(g)(2) does not apply to Plaintiff's claims.

10

motion with respect to this request without any further discussion.

Next, both Defendants (Sears and the Plan) seek dismissal of the fourth and fifth causes of action, asserting that even if the factual allegations set forth in Plaintiff's complaint are taken as true, these claims are insufficient as a matter of law to state a claim upon which this court may grant relief because ERISA does not provide for the relief sought by Plaintiff. Plaintiff opposes this request.

### A.    Plaintiff's Fourth Cause of Action (Breach of Fiduciary Duty)

Plaintiff's fourth cause of action seeks to impose liability on Defendants for breach of the fiduciary duties imposed by ERISA. In their motion to dismiss, Defendants argue that this cause of action fails to state a claim because the relief Plaintiff seeks is unavailable under ERISA's remedial scheme. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) ("The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly. internal quotations and citations omitted. . . ."). Specifically, Paragraphs 29 and 30 of Plaintiff's complaint provide:

29.    Defendants have breached their fiduciary duties to Plaintiff by failing to administer the Plan in accordance with the written documentation governing the Transition Pay Plan in violation of Title 29 U.S.C.S. Sec. 1104 and Title 29 U.S.C.S. Sec. 1109.

30.    As a direct and proximate result of the acts and practices of Defendants, Plaintiff is informed and believes that he is entitled to an award of damages, liquidated damages, prejudgment interest, costs, and legal fees in an amount to be determined by the trier of fact.

(Pl.'s Compl. ¶¶ 29, 30.)

In their motion, Defendants point out that ERISA's civil enforcement provisions include two

sections under which a claimant may prosecute a claim for breach of fiduciary duty: sections 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and (3).[5] Defendant asserts that the relief Plaintiff seeks is not available under either section. Thus, the court considers each section in turn.

### 1.     Section 502(a)(2), 29 U.S.C. § 1132(a)(2)

Section 502(a)(2) provides that a civil action may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 409, 29 U.S.C. § 1109, provides that:

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109. As the Fourth Circuit Court of Appeals has recently stated, "[r]ecovery under this subsection must 'inure[] to the benefit of the plan *as a whole*," not to particular persons with rights under the plan." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 450 F.3d 570, 573-74 (4th Cir. 2006), *rehearing denied in LaRue v. DeWolff, Boberg & Assocs., Inc.*, — F.3d —, 2006 WL 2311108 (4th Cir. Aug. 8, 2006) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. at 140) (emphasis supplied in *Larue*). In *Russell*, the United States Supreme Court stated that "[a] fair contextual reading of [section 1109] makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." 473 U.S. at 142 (footnote omitted); *see also LaRue*, 450

---

[5] It should be noted that Plaintiff seeks relief under section 502(a)(3) in his fifth cause of action. However, for the sake of completeness, the court addresses section 502(a)(3) in conjunction with both Plaintiff's fourth and fifth causes of action.

12

F.3d at 573 (quoting the same).

Here, it can hardly be said that the remedy Plaintiff seeks "inures to the benefit of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. at 140. Rather, the remedy Plaintiff seeks is nothing more than a personal remedy, in that Plaintiff seeks an individual recovery of "damages, liquidated damages, prejudgment interest, costs, and legal fees." (Pl.'s Compl. ¶ 30.) As in *LaRue*, the present case "involves a single plaintiff who [seeks] to recover for an individual loss; indeed, [Plaintiff] did not even allege a 'loss to the plan,' but only to his 'interest in the plan.'" *LaRue*, 2006 WL 2311108 at *1. Because "[n]either the text of Section 502(a)(2) nor Supreme Court precedent contemplate[s] a remedy for individual, rather than plan, losses," and because "a § 502(a)(2) claim must be brought in a 'representative capacity on behalf of the plan as a whole,'" the court agrees with Defendants that section 502(a)(2) does not afford the relief Plaintiff seeks. *Id.* at *1, 2 (quoting *Russell*, 472 U.S. at 141 n.9). The court next determines whether section 502(a)(3) affords the relief sought by Plaintiff.

### 2.    Section 502(a)(3), 29 U.S.C. § 1132(a)(3)

Pursuant to section 502(a)(3) a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

In *Mertens v. Hewitt Assocs.*, the United States Supreme Court considered the scope of relief available to a plaintiff under section 502(a)(3). 508 U.S. 248 (1993). The court determined that "equitable relief" refers only to those "categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)" in the days of the

divided bench. *Id*. at 256; *see also Sereboff v. Mid Atlantic Medical Servs., Inc.*, — U.S. —, 126 S.Ct. 1869, 1870 (May 15, 2006) ("In [*Mertens*], this Court construed § 502(a)(3)(B) to authorize only 'those categories of relief that were *typically* available in equity,' and thus rejected a claim that this Court found sought 'nothing other than compensatory *damages*.").

In *Great-West Life & Annuity Ins. Co. v. Knudson*, the Supreme Court elaborated on its interpretation of § 502(a)(3) and determined that the restitutionary remedy sought by Great-West would not have been equitable in the days of the divided bench because the funds Great-West sought were not in the possession of Knudson, but instead had been placed in a trust under California law. 534 U.S. 204, 212 (2002). Likewise, in *LaRue*, the Fourth Circuit Court of Appeals determined that "*Mertens* and its progeny compel the conclusion that the remedy plaintiff desires falls outside the scope of [section 502(a)(3)]." 450 F.2d at 575. The court in *LaRue* stated:

> As in *Mertens*, although he 'often dance[s] around the word," what plaintiff "in fact seek[s] is nothing other than compensatory *damages* – monetary relief for all losses . . . sustained as a result of the alleged breach of fiduciary duties." "Money damages are, of course, the classic form of *legal* relief," and have therefore remained conspicuously absent from the list of traditional equitable remedies available under § 1132(a)(3)**.**
>
> While that list does include "restitution, this form of recovery is not so broad as to include the compensatory relief that plaintiff seeks. As the Supreme Court explained in *Great-West Life & Annuity Insurance Co. v. Knudson*, "not all relief falling under the rubric of restitution is available in equity." In particular, for restitution to lie in equity," as opposed to at law, "the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."
>
> The Supreme Court's most recent § 1132(a)(3) decisions demonstrate how the absence of unjust possession is fatal to an equitable restitution claim. . . .
>
> . . . Plaintiff does not allege that funds owed to him are in defendants' possession, but instead that these funds never materialized at all. He therefore gauges his recovery not by the value of defendants' nonexistent gain, but by the value of his own loss – a measure that has been traditionally legal, not equitable. Thus, at core, he seeks "to

14

obtain a judgment imposing merely a personal liability upon the defendant[s] to pay a sum of money." As *Knudson* explained, historically, "[s]uch claims were viewed essentially as actions at law," and they are therefore unavailable under § 1132(a)(3).

*LaRue*, 450 F.3d at 575-76 (internal citations omitted).

In the present case, the court agrees with Defendants that Plaintiff does not seek restitutionary relief, or in fact, any "other appropriate equitable relief" at all; rather, Plaintiff seeks nothing more than an award of damages. Thus, the court recognizes that neither section 502(a)(2) nor section 502(a)(3) afford the relief Plaintiff seeks.[6] However, because Plaintiff does assert that Defendants breached their fiduciary duties by failing to administer the Plan in accordance with the Plan documents, rather than dismissing Plaintiff's claim for failure to seek appropriate relief, this court grants Plaintiff twenty days leave to file an amended complaint, seeking appropriate *and available* relief, to the extent that the facts permit him to do so, for a claim for breach of fiduciary duty.

### B.     Plaintiff's Fifth Cause of Action (To Enjoin Action Under 29 U.S.C. § 1132(a)(3))

In Plaintiff's fifth cause of action, titled "claim to enjoin action under 29 U.S.C.S. Sec. 1132(a)(3)," Plaintiff asserts that he has made "repeated written demands upon Defendants that his benefits be paid in full or he be given an understandable reason why they have not [been], in accordance with the Plan documents and ERISA 29 U.S.C.S. Sec. 1132." (Pl.'s Compl. ¶ 33.) Plaintiff asserts that Defendants have failed to comply with the Plan documents and federal law, and that Defendants have failed to conduct a full and fair investigation into his claims. (Pl.'s Compl. ¶¶

---

[6] Plaintiff claims in his response to Defendants' motion to dismiss that he needs more discovery. However, as Defendants point out, "[n]o amount of discovery will change the legal fact that under ERISA, Plaintiff is not entitled to the relief he seeks in his fourth and fifth causes of action." (Defs.' Reply at 3.)

15

33-36.) Then Plaintiff states: "As a direct and proximate result of the acts and practices of Defendants, Plaintiff is informed and believes he is entitled to an award of damages, liquidated damages, prejudgment interest, costs, and legal fees in an amount to be determined by the trier of fact." (Pl.'s Compl. ¶ 38.)

As previously mentioned, ERISA section 502(a)(3) permits a participant, beneficiary, or fiduciary to bring a civil action "(a) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. 1132(a)(3). Here, while Plaintiff states that his claim is one to "enjoin action" under section 502(a)(3), Plaintiff seeks no equitable relief. Moreover, even in his response to Defendants' motion to dismiss, Plaintiff does not claim that he seeks injunctive relief or other appropriate equitable relief; rather Plaintiff states that he "needs to do some discovery to determine the exact relationship between Sears and the Transition Pay Plan." (Pl.'s Response at 7.) Again, as Defendants point out in their reply, "[n]o amount of discovery will change the legal fact that under ERISA, Plaintiff is not entitled to the relief he seeks in his fourth and fifth causes of action." (Defs.' Reply at 3.)

Ultimately, therefore, the court agrees with Defendants that § 502(a)(3) does not afford the relief sought by Plaintiff in his fifth cause of action. However, as with Plaintiff's fourth cause of action, rather than dismissing it for failure to state a claim, the court grants Plaintiff twenty days leave to file an amended complaint, seeking appropriate *and available* relief, to the extent that the facts permit him to do so, for a claim pursuant to section 502(a)(3). *See Great-West*, 534 U.S. at 213-15.

### III.     Defendants' Request for Attorney's Fees

In conjunction with both their motion to strike and their motion to dismiss, Defendants request that the court grant them their reasonable attorney's fees and costs, pursuant to ERISA section 502(g)(1), 29 U.S.C. § 1132(g)(1).  Pursuant to 29 U.S.C. § 1132(g), "the court in its discretion may allow a reasonable attorney's fee . . . ."  *See Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017 (4th Cir. 1993) (construing 29 U.S.C. § 1132(g)).  "In *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1217-18 (4th Cir. 1990), [the Fourth Circuit Court of Appeals] adopted a five-factor test to guide the district court's exercise of discretion in awarding attorney[']s[] fees under ERISA."  *Quesinberry*, 987 F.2d at 1028-29.  These five factors consist of: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of opposing parties to satisfy an award of attorney's fees; (3) whether an award of fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself, and (5) the relative merits of the parties' positions.  *See Reinking*, 910 F.2d at 1217-18 (citing *Iron Workers Local #272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)); *Quesinberry*, 987 F.2d at 1029.  "This five factor approach is not a rigid test, but rather provides general guidelines for the district court in determining whether to grant a request for attorney's fees."  *Id.* (citing *Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 258 (1st Cir. 1986)).  Stated differently:

> No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g) [1132(g)].  In particular types of cases, or in any individual case, however, other considerations may be relevant as well.

*Bowen*, 624 F.2d at 1266.  The Fourth Circuit has stated that there is no presumption in favor of a

17

prevailing insured or beneficiary. *See Quesinberry*, 987 F.2d at 1029-30.

Weighing these factors in the present case, the court concludes that an award of attorney's fees is not warranted at this time. First, Defendants have offered no evidence that Plaintiff has acted in bad faith; nor have Defendants provided any information with regard to Plaintiff's ability to pay an award of fees. Also, it is not clear that an award of attorney's fees would deter persons acting under similar circumstances, and it does not seem that Defendants sought, in their motions, to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself. Finally, although the relative merits of the parties' positions clearly weigh in favor of Defendants, this court does not find this factor alone sufficient to support an award of attorney's fees at this time.

## CONCLUSION

Therefore, it is **ORDERED**, for the foregoing reasons, that Defendants motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the court dismisses Plaintiff's second, third, and sixth causes of action as to Defendant Plan. However, the court denies the remainder of Defendants' motion and instead grants Plaintiff twenty (20) days leave to file an amended complaint in which he seeks appropriate and available relief, to the extent that the facts permit him to do so. Next, Defendants' motion to strike is **GRANTED** in whole. Defendants' request for attorney's fees with respect to both motions is **DENIED**.

...

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

Charleston, South Carolina
September 8, 2006